# THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### EASTERN DIVISION

NO.  4:06-CV-209-D(3)

| | | |
|---|---|---|
| ANGELA G. HALE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

_____

This matter is before the Court on Plaintiff's Motion for Judgment on the Pleadings, [DE-10] Defendant's Cross-Motion for Judgment on the Pleadings [DE-17] and Plaintiff's Memorandum in Opposition to Defendant's Motion for Judgment on the Pleadings. [DE-25].  These motions are now ripe for adjudication.

Pursuant to 42 U.S. C. § 405(g), the underlying action seeks judicial review of the final decision by Defendant denying Plaintiff's applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income payments ("SSI").  Pursuant to 28 U.S.C. § 636(b)(1), this matter is before the undersigned for a memorandum and recommendation. For the reasons set forth herein, the undersigned recommends that  Plaintiff's Motion for Judgment on the Pleadings be DENIED and Defendant's Cross-Motion for Judgment on the pleadings be GRANTED and the final decision by Defendant be AFFIRMED.

## Statement of the Case

On June 29, 2004, Plaintiff filed applications for  DIB and SSI, alleging disability beginning November 20, 2003. [R. pp. 16, 49].   The applications were denied initially and on reconsideration

and Plaintiff timely filed a request for hearing before an Administrative Law Judge ("ALJ"). Id. at

16, 32-36, 251-253. A hearing was held on February 2, 2006. The ALJ found Plaintiff not disabled.

Id. at 16-25, 262-293. Plaintiff requested review by the Appeals Council, which was denied,

rendering the February 2, 2006 decision of the ALJ the final decision of the Commission. Id. at 16,

8-10. Having exhausted all administrative remedies, Plaintiff filed this action on September 29,

2006. [DE-4].

### Standard of Review

The Court is authorized to review Defendant's denial of benefits under 42 U.S.C. § 405(g),

which provides in pertinent part:

> The court shall have power to enter, upon the pleadings and transcript of the record,
> a judgment affirming, modifying, or reversing the decision of the Commissioner of
> Social Security, with or without remanding the cause for a rehearing. The findings
> of the Commissioner of Social Security as to any fact, if supported by substantial
> evidence, shall be conclusive . . . . Id.

"Under the Social Security Act, [the Court] must uphold the factual findings of the Secretary if they

are supported by substantial evidence and were reached through application of the correct legal

standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Richardson v. Perales, 402 U.S. 389, 401 (1971). "It consists of more than a mere scintilla of

evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642

(4th Cir.1966). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh

conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the

Secretary." Craig, 76 F.3d at 589. Thus, it is this Court's duty to determine both whether the

Commissioner's finding that Plaintiff was not disabled is "supported by substantial evidence and

2

whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir.1990).

## Analysis

The Social Security Administration has promulgated the following regulations which establish a five-step sequential evaluation process which must be followed to determine whether a claimant is entitled to disability benefits:

> The five step analysis begins with the question of whether the claimant engaged in substantial gainful employment. 20 C.F.R. § 404.1520(b). If not, the analysis continues to determine whether, based upon the medical evidence, the claimant has a severe impairment. 20 C.F.R. § 404.1520(c). If the claimed impairment is sufficiently severe, the third step considers whether the claimant has an impairment that equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations. 20 C.F.R. § 404.1520(d); 20 C.F.R. Part 404, subpart P, App.I. If so the claimant is disabled. If not, the next inquiry considers if the impairment prevents the claimant from returning to past work. 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a). If the answer is in the affirmative, the final consideration looks to whether the impairment precludes the claimant from performing other work. 20 C.F.R. § 404.1520(f). Mastro v. Apfel, 270 F.3d 171, 177 (4th Cir. 2001).

In the instant action, the ALJ employed the five-step evaluation. First, the ALJ found that Plaintiff "had not engaged in substantial gainful activity at any time relevant to this decision."[R. p. 18]. At step two, the ALJ found that Plaintiff "has the following severe impairments: fibromyalgia, a major depressive/Bipolar I disorder, a personality disorder, and Raynaud's syndrome. (20 CFR 404. 1520(c) and 419.920(c))." Id. Completing step three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR 404, Subpart P, Appendix 1." Id. The ALJ then proceeded to step four of her analysis and determined that Plaintiff retained the residual functional capacity ("RFC ") "to perform a limited range of medium work."[1] Id. Based on this finding, the

---

[1] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. 404.1567(c).

3

ALJ found Plaintiff could not perform any of her past relevant work. Id. At step five, the ALJ

concluded that Plaintiff was not under a disability as defined in the Social Security Act at any time

through the date her insured status expired. Id.

In making these determinations, the ALJ cited substantial evidence, including a review of

the medical records.

In July 2003, Dr. Meena Sekaran of Halifax Medical Specialists concluded that Plaintiff "has

possible depression secondary to all her pain" and was started on anti-depressant medication. Id.

at 21, 155. She was seen at the mental health center for major depressive disorder/Bipolar I disorder

and personality disorder where she received medication and psychotherapy treatment. Id. at 21, 192-

195.

Plaintiff was seen by Dr. Kevin Good, a psychiatrist/neurologist in October 2003 for an

evaluation of headaches. [R. pp. 20, 248-249]. A neurologic examination was unremarkable and a

magnetic resonance imaging of the brain was negative. Id. Plaintiff was found to have "multiple

trigger points in the neck and shoulder region." Id. Dr. Good was of the opinion that she had

myofascial pain syndrome in the neck and shoulders underlying the chronic headaches and started

[Plaintiff] on Neurontin" Id. His notes reflect that Plaintiff "had normal gait and stance and could

tandem and toes and heel walk without difficulty." Id. There are no further treatment records by Dr.

Good and "subsequent records do not show chronic complaints of headaches." Id. at 20.

In August 2004, Plaintiff underwent a rheumatology evaluation by Dr. Nortin Hadler. His

opinion was that Plaintiff "did not have any systemic rheumatic disease." Id. at 20, 104-107. "ANA

serology and nonspecific and specific serologies were negative to include rheumatoid factor and

SED rate." Id. at 20, 106. "She had no evidence of edema, full range of motion of all joints, no

evidence of synovitis, and normal gait." Id.   "Dr. Hadler felt that the [Plaintiff] seemed to have 'acquired elements of a functional somatic syndrome' in the 'process of this futile diagnostic workup,' and recommended counseling coupled with an exercise program." Id.

In April 2004, based on Plaintiff's history of cramping and weakness in the legs, Dr. Mario G. Fiorilli diagnosed Plaintiff with Raynaud's syndrome. Id. at 20, 152. However, a bilateral lower extremity arterial ultrasound was essentially unremarkable. Id. at 20, 180. The ALJ noted that the "medical records do not show any severe manifestations of this disease." Id. at 20.

The ALJ acknowledged that Plaintiff continues to report ongoing pain and "has a history of myalgias and arthralgias with a high ANA titer of 1:160 on laboratory testing." Id. at 20, 164. "Nevertheless, examination and testing has failed to show definitive evidence of any autoimmune disorder." Id. at 20, 106, 148, 154, 156, 248.

On September 14, 2004, Plaintiff was seen at Roanoke Valley Pain Center by Dr. Joey Thomas. Id. at 20, 139. He noted that she had multiple tender areas and a touch of discoloration of her skin. Id. However, her "motor power was 5/5 in the upper and lower extremities bilaterally and straight leg raising was negative." Id.   Followup visit records indicate that Plaintiff was prescribed a Duragesic patch and Methadone for pain. Id. at 21, 207, 211.

In September 2004, she was seen by Dr. Anthony G. Carraway for a consultative psychiatric evaluation. Id. at 21, 183-186.  "Both [Plaintiff] and her spouse reported chronic interpersonal difficulties predating her chronic pain symptoms." Id. at 21, 183.  "She displayed significant impairment of short term memory and mild impairment of immediate memory. However, she had no impairment of attention and concentration." Id. at 21, 185. Dr. Carraway concluded from information provided by Plaintiff and her husband that she was "suffering from a mood disorder due

5

to chronic pain and chronic medical illness with depressive symptoms and a personality disorder - not otherwise specified." Id. He was also of the opinion that Plaintiff had "mild to moderate impairment in her ability to perform simple, routine, repetitive tasks" and that she "would have continued interpersonal difficulty in the work setting based on her reports of inability to get along with co-workers." Id. Dr. Carraway gave her a global assessment of function ("GAF") of 58 which indicates moderate symptoms or moderate difficulty in one of the following: social, occupational or school functioning. Id. at 21, 185. Subsequent records indicate improvement with ongoing psychotherapy and medications received at Carriage House Psychological Associates. Id. at 21, 187-196. The ALJ gave considerable weight to Dr. Carraway's psychiatric opinion but not controlling weight because of the evidence that Plaintiff showed improvement of her mental disorders with ongoing therapy. Id. at 23.

On October 11, 2004, based on her history and complaints, Dr. Ravinder Mamedi diagnosed Plaintiff with a major depressive disorder with psychotic features and personality disorder. Id. at 21, 206. He rated her with a GAF of 55 which was within the same range reported earlier by Dr. Carraway. Id. On March 21, 2005, Plaintiff "reported episodes of mania and no improvement in her condition." Dr. Mamedi diagnosed Plaintiff with Bipolar I disorder and gave her samples of Depakote. Id. at 21, 203. "Subsequent records from Dr. Mamedi as well as treatment records from Carriage House Psychological Associates show improvement with ongoing therapy and no ongoing psychosis, paranoid ideation, or recurrent mania episodes." Id. at 21. In a follow up visit with Dr. Mamedi on June 24, 2005, Plaintiff reported "doing better."A followup mental status examination was essentially unremarkable. Id. at 21, 201. "She had intact memory, good insight and judgment and no flight of ideas, loosening of associations or perceptual disturbances." Id. He rated her with

6

a GAF of 60 which was within the same range as reported earlier. It was the same when seen on November 22, 2005. Id. During the November 20, 2005 examination, Dr. Mamedi noted that Plaintiff "reported improvement in her depression and stable mood." Id. at 21, 197. A mental status examination found her affect was cheerful. Id. Further, Dr. Mamedi noted during that visit that Plaintiff was alert and oriented, had intact memory, and good insight and judgment. Id.

Non-examining State agency medical consultants reviewed Plaintiff's records on October 8, 2004 and March 9, 2005 and found that she was "capable of unskilled medium work activity with limited demands for production and interaction with others." Id. at 23, 124, 128. The ALJ gave these opinions "great weight in light of the evidence." Id.

The ALJ also evaluated all of Plaintiff's symptoms, including her pain. Id. at 22. The ALJ concluded that Plaintiff's statements concerning her pain were not entirely credible. Id. In reaching this conclusion, the ALJ noted that Plaintiff testified at the Hearing that

> she suffers from chronic pain throughout her body in all muscles and joints as well as in her legs and low back. Id. at 22, 271. She reported chronic headaches, depression and fatigue. She testified that problems with memory and pain preclude her from performing her past relevant work and noted that she gets irritated quickly and has problems getting along with others. Id. at 22, 278-279.

> Nevertheless, both the [Plaintiff] and her spouse indicated to Dr. Carraway that her chronic interpersonal difficulties predated her chronic pain symptoms, Id. at 22, 183 and she testified at the hearing that she left her last job due to personal reasons, not because of any illness or sickness. Id. at 22, 268. Further, [Plaintiff] acknowledged . . . that she was on unemployment for 6 months after she left her last job and thus held herself as employable despite her allegations that she was unemployable due to her impairments. Id. at 22, 280, 281. [Plaintiff] also testified that she could take care of her personal needs, and she has a driver's license and drives. [R. p. 22, 270]. Further, physical examinations have repeatedly shown normal strength in the upper and lower extremities and no impairment in the [Plaintiff's] ability to ambulate or perform fine and gross movements effectively. Id. at 22, 139, 249.

In addition, Plaintiff testified that she is presently "being treated with medications from her

7

psychiatrist only and not undergoing any psychotherapy." Id. at 22, 279-280. After weighing all of the evidence, the ALJ concluded that Plaintiff has the RFC to perform a limited range of medium work.

At the administrative hearing, a vocational expert ("VE") testified that a person of Plaintiff's RFC, age, education, work experience and Plaintiff's RFC could perform jobs such as photocopy operator, shipping and receiving weigher, and mail clerk which exists in significant numbers in the national economy.[2] Id. at 24. Based on the VE's testimony, the ALJ concluded that "considering [Plaintiff's] age, education, work experience[3] and [RFC]," the Plaintiff was not disabled. Id. at 25.

Plaintiff contends that the primary issues before the Court are "purely legal" and therefore requests a *de novo* review of the ALJ's findings. The district court does not review a final decision of the Commission *de novo*. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Blalock v. Richardson, 484 F.2d 773, 775 (4th Cir. 1972). The court may not reweigh the evidence or substitute its own judgment for that of the Commissioner, even if the court disagrees with the decision as long as it is supported by substantial evidence. The ALJ has the ultimate responsibility for weighing the evidence and resolving its conflicts. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## Assignments of Error

The first assignment of error raised by Plaintiff is that "[t]he ALJ's hypothetical question to the VE was deficient as a matter of law because it failed to adequately convey all of Hale's significant limitations." [DE-11]. Specifically, Plaintiff contends that the hypothetical question

---

[2] The VE testified that these jobs are classified as light work. [R. pp. 290-291].

[3] Plaintiff was 29 years old on the alleged onset date and has a limited education. Transferability of job skills is not material due to her age. [R. p. 24].

posed to the VE did not convey that she was severely bipolar, was unable to concentrate, that she

was in constant pain warranting treatment with Methadone, that she was moderately impaired even

to do simple, routine, repetitive tasks, and, that she would have "continued interpersonal difficulty

in the work setting." Id. Plaintiff argues that the hypothetical question must be precise and

specifically detail Plaintiff's impairments and that merely stating that she is limited to simple,

routine, repetitive tasks is "too general, too non-specific and too imprecise to convey" her

limitations. Id.

The Fourth Circuit has held that "in order for a vocational expert's opinion to be relevant or

helpful, it must be based upon a consideration of all other evidence in the record, and it must be in

response to proper hypothetical questions which fairly set out all of claimant's impairments."

Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989). "As we recently held in Johnson v. Barnhart, 434

F.3d 650 (4th Cir. 2005), a hypothetical question is unimpeachable if it 'adequately reflect[s]' a

residual functional capacity for which the ALJ had sufficient evidence. Fisher v. Barnhart, 2006 U.S.

App. LEXIS 12064, No. 05-1473, at 364; Johnson at 659.

In Fisher, the claimant argued that the hypothetical question posed to the VE had to be

medically specific. The court held that:

> "[a]s Johnson and Walker dictate, . . . the ALJ has some discretion to craft
> hypothetical questions to communicate to the vocational expert what the claimant
> can and cannot do. Moreover, it is the claimant's functional capacity, not his clinical
> impairments that the ALJ must relate to the vocational expert." Fisher at 364.

Further, the court stated that

> "[p]erhaps more importantly, in arguing that an ALJ must include a list of the
> claimant's medical impairments in his hypothetical question to the vocational expert,
> Fisher fundamentally misunderstands the scope of the vocational expert's expertise.
> Vocational experts are not experts in psychology who are qualified to render
> opinions on how the claimant's ailments might be reflected in his capabilities; rather,

9

they are employment experts who know the mental and physical demands of different types of work . . . ." Id. at 365.

Plaintiff has not challenged the ALJ's findings regarding her RFC. However, in essence, Plaintiff's argument is that there was not substantial evidence to support the ALJ's finding regarding Plaintiff's RFC. RFC is a measurement of the most a claimant can do despite her limitations. See 20 C.F.R. §§ 404.1545, 416.945(a). An individual's RFC is determined only after considering all relevant evidence concerning the individual's impairments and any related symptoms. 20 C.F.R. § 404.1545(a).

The medical records previously summarized provide substantial evidence to support each of the ALJ's findings regarding her assessment of Plaintiff's RFC. After considering all the evidence of record, including Plaintiff's testimony, the ALJ found

> [Plaintiff] has fibromyalgia, a major depressive disorder/Bipolar I disorder, a personality disorder, and Raynaud's syndrome which limit her ability to lift, carry, sit, stand, concentrate, interact and adapt to changes. However, despite her severe impairments, the evidence supports a conclusion that [Plaintiff] can lift 50 pounds with frequent lifting and carrying of up to 25 pounds and perform simple, routine, repetitive tasks in a non-production environment with limited interpersonal interaction. She requires an option to alternate sitting and standing at one hour intervals. Accordingly, the [ALJ] finds that the [Plaintiff] retains the residual functional capacity to perform a limited range of medium work. [R. p. 23].

At the Hearing, a VE was asked to testify. Prior to the VE rendering her opinion, the following exchange took place:

> Q: Ms. Engler, have you had an opportunity to review the file?
> A: Yes.
> Q: And have you listened to the testimony?
> A: I have.   Id. at 286.

In addition, the VE asked a number of questions to clarify Plaintiff's past employment. Id. at 286-289.  Thus, in this case, unlike in Riley v. Chater, 1995 U.S. App. LEXIS 14787, the VE asked

10

questions which ensured that she knew what Plaintiff's abilities and limitations were. Id. at 3. The

ALJ then posed the following hypothetical questions to the VE:

> I'd like you to assume that we have a claimant of the same age, education and vocational background as the claimant. I'd like you to further assume that said claimant would be limited to the performance of simple, routine, repetitive tasks in a non-production environment with limited demands of interpersonal action and interaction, limited interaction with others. Would there be any jobs that such a person could perform? Id. at 290.

The VE indicated that "[o]ne could perform jobs such as laundry laborer, . . . Cleaner, hospital,

. . . Cleaner, industrial, . . . ." Id.

> This is a second hypothetical. If I limit the claimant as in the first hypothetical but added a limitation to jobs which allowed her to change, allowed the hypothetical claimant to change positions through the course of the day at one hour intervals from sitting to standing and back again would she, would there be jobs that such a person could perform? Id. at 24, 290.

The VE acknowledged that such an individual could perform occupations such as "photocopy

operator, . . . shipping and receiving weigher, . . . and mail clerk . . . ." She further testified that

there were a significant number of these jobs in North Carolina and in the national economy.

  The Court finds that the ALJ properly considered all relevant evidence, including the

evidence favorable to Plaintiff, weighed conflicting evidence, and fully explained the factual basis

for her resolutions of conflicts in the evidence. Because the ALJ's RFC determination is supported

by substantial evidence and the challenged hypothetical question posed to the VE incorporated the

RFC, the Court finds Plaintiff's argument is without merit.

  Plaintiff next contends that "[t]he ALJ erred as a matter of law to properly evaluate Plaintiff's

subjective complaints of pain as required by Craig." [DE-11]. In Craig, the Fourth Circuit

recognized that the regulations governing the evaluation of pain in the Social Security Disability

Insurance program and the Supplemental Security Income program outline a two-step process.

11

Craig at 594. At step one, "subjective claims of pain must be supported by objective medical evidence showing the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig at 591. The focus is on determining an underlying impairment. Id. at 592. Only after Plaintiff meets her threshold is "the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work" evaluated. Id. at 595

Specifically, Plaintiff contends that the ALJ failed to inquire at step one of the process "whether [Plaintiff's] objective medical condition could reasonably be expected to produce the pain alleged, *to the degree alleged*. Rather, the ALJ asked merely whether [Plaintiff's] condition could reasonably be expected to produce the alleged symptoms." Id. (emphasis in the original). Further, Plaintiff contends that the ALJ failed to give her testimony regarding her pain "great weight."[4] [DE-11]. Plaintiff is misguided in her interpretation of the standard required by Craig in evaluating her pain. Craig states "[al]though a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers." Craig at 595.

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms." [R. p. 22]. However, at step two she found that "the [Plaintiff's] statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible." Id.

---

[4] Plaintiff also relies on decisions from other circuits; however, they are not controlling and will not be addressed.

12

It is generally not the role of this Court to substitute its own credibility determination for those of the ALJ. Craig at 589. The ALJ found that Plaintiff's testimony was not consistent. First, she noted that Plaintiff testified she is precluded from past work because of her memory and pain. [R. p. 22, 278-279]. However, Plaintiff also testified that she left her last employment because of personal reasons and not because of illness or sickness. Id. at 22, 268. Plaintiff and her husband also told Dr. Carraway that her interpersonal problems predated her pain. Id. at 22, 183.

As summarized above, the findings of the ALJ demonstrate that she considered Plaintiff's subjective complaints, including pain, in light of the medical evidence, Plaintiff's daily activities and the findings and opinions of the treating physicians and consultative examiners. This Court finds that there was substantial evidence to support the ALJ's assessment of Plaintiff's subjective complaints of pain. Accordingly, Plaintiff's argument is without merit.

Plaintiff's third assignment of error is that the ALJ erred "by not allowing [Plaintiff's] representative to ask the VE appropriate questions concerning the effect of [Plaintiff's] pain on her ability to work." [DE-11]. At the Hearing, Plaintiff's representative asked the VE "[g]iven those theoreticals, . . . would a person who was having chronic pain of even moderate degree but on a daily basis, would that affect their ability to perform those jobs?" [DE-11, R. p. 291]. The ALJ responded that "[s]he's not a doctor and she cannot testify to that, ask the question in terms that she can answer, please." Id. Plaintiff contends that "the law . . . requires the ALJ's hypothetical to inform the VE of a claimant's significant pain." Id. (citing Russell v. Sullivan, 1990 WL 136648 (4th Cir); Wick v. Barnhart, 2006 U.S. App. LEXIS 6493 (9th Cir. 2006); Owens v. Barnhart, 48 Fed. Appx. 624, 626 (9th cir. 20020: Chrupcala v. Heckler, 829 F.2d 1269, 1276 (3d Cir. 1987); Jimerson

13

v. Barnhart, 51 Fed. Appx. 208, 211 (9th Cir. 2002)).[5]

Russell is inapposite. That case was remanded because the ALJ failed to recognize the objective medical evidence that supported Plaintiff's subjective complaints of pain. In addition, portions of the testimony of the VE were inaudible. Therefore, the Court held that "[w]hen a claimant suffers a non-exertional impairment, such as pain, it is imperative that testimony from a vocational expert be obtained in order to determine whether there are jobs in the national economy which the claimant is capable of performing." Id. at 2.

What is required to be communicated to the VE is the claimant's functional capacity in spite of her pain. Walker at 49. Here, the Court has already concluded that there was substantial evidence to support the ALJ's RFC determination and that the hypothetical question posed to the VE was proper. In addition, as required by Russell, the ALJ relied on the testimony of a VE and not on the grids in determining whether there were jobs in the national economy in which Plaintiff was capable of performing. Further, "[v]ocational experts are not experts in psychology who are qualified to render opinions on how the [Plaintiff's'] ailments might be reflected in his capabilities; rather, they are employment experts who know the mental and physical demands of different types of work." Fisher at 365. The ALJ did not prevent Plaintiff's representative from questioning the VE on issues that she was qualified to answer. Rather, the ALJ requested that Plaintiff's representative ask questions on which the VE was competent to testify. For these reasons, Plaintiff's argument is without merit.

Plaintiff last assigns error to the ALJ's failure to consider post-hearing evidence submitted

_____

[5] Wick, Jimerson and Chrupcala are from the Ninth Circuit, are not controlling and will not be discussed.

14

to refute the ALJ's presumption that Plaintiff committed perjury and forgery. [DE-11]. Prior to the hearing, Plaintiff submitted letters from herself and her former manager, Jennifer Keeter in support of her disability. [R. pp. 22, 88, 90]. The ALJ noted that "examination of both letters shows that the letterhead and typeset on the [Plaintiff's] letter is exactly the same as the letter purportedly from the [Plaintiff's] manager, Ms. Keeter. Further, the signatures also appeared to have been penned by the same individual." Id. At the hearing, Plaintiff denied writing or signing both letters. She responded "maybe Jennifer had the same software." Id. at 23, 283. The ALJ found Plaintiff's "argument unconvincing in light of the obvious similarities." Id. at 23. Following the hearing Plaintiff's representative submitted a warranty deed showing Keeter's signature, along with an affidavit from Keeter which stated that the materials previously submitted by Plaintiff were genuine. Id., R. pp. 256, 260. The ALJ did not mention Keeter's post-hearing affidavit in the record. Plaintiff contends that the denial of her claim was "heavily influenced by [the ALJ's] assessment of [Plaintiff's] credibility" in light of the ALJ's belief that Plaintiff forged a letter from Keeter and then committed perjury concerning the genuineness and preparation of the letter. [DE-11]. Therefore, Plaintiff contends that the case should be remanded.

The ALJ found that "[t]he evidence of record, as summarized above, as well as the [Plaintiff's] own testimony, does not support her allegations of total disability." [R. p. 20.] Further, the ALJ stated

> [g]iven her own testimony that she drew unemployment for 6 months after she left her last job and thus held herself out as employable as well as her unconvincing argument at the hearing regarding the letter from Ms. Keeter, the Administrative Law Judge gives little credence to the allegations of total disability. [R. p. 23].

The letters submitted by Plaintiff were only one factor the ALJ considered in making the

credibility determination. Although the record does not reveal whether the ALJ considered the post-hearing evidence provided by Plaintiff, this evidence was only one factor the ALJ considered in making her determination. The evidence summarized above provides substantial evidence to support the ALJ's conclusion. Accordingly, the Plaintiff's argument is without merit.

## Conclusion

For the reasons discussed above, it is HEREBY RECOMMENDED that Plaintiff's Motion for Judgment on the Pleadings [DE-11] be DENIED, Defendant's Motion for Judgment on the Pleadings [DE-17] be GRANTED, and the final decision by Defendant be AFFIRMED.

SO RECOMMENDED in Chambers at Raleigh, North Carolina this 24th day of April, 2007.

_____
William A. Webb
U.S. Magistrate Judge

16