IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:06-CV-209-D(3)

| | | |
|---|---|---|
| ANGELA G. HALE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

Angela G. Hale ("plaintiff") appeals the final decision by defendant Michael J. Astrue, the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits and Supplemental Security Income payments (collectively, "benefits"). On April 24, 2007, Magistrate Judge Webb issued a Memorandum and Recommendation ("M&R") recommending that plaintiff's motion for judgment on the pleadings be denied, defendant's motion for judgment on the pleadings be granted, and the Commissioner's final decision be affirmed. On May 8, 2007, plaintiff objected to the M&R, and the government responded. As explained below, the court overrules plaintiff's objections to the M&R, adopts the M&R, and affirms the Commissioner's final decision.

I.

"The Federal Magistrates Act requires a district court to make a de novo determination of those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made." Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (quoting 28 U.S.C.A. § 636(b)(1)). Absent a timely objection, "a district court need not conduct a de novo review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." Id. (quotation omitted).

The court has reviewed the record, the briefs, the M&R, the objections, and the response. As for those portions of the M&R to which the plaintiff does not object, the court is satisfied that there is no clear error on the face of the record. Thus, the court adopts those portions of the M&R. As for the objections, the court reviews them de novo.

In conducting its review of the objections to the M&R, the court applies the same legal standard that Judge Webb discussed in the M&R. See M&R 2-3. Specifically, a court "must uphold the factual findings of the [the ALJ] if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); 42 U.S.C. §§ 405(g) & 1383(c)(3). "Substantial evidence" means "more than a mere scintilla of evidence but may be somewhat less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

## II.

On February 2, 2006, an administrative law judge ("ALJ") held a hearing regarding plaintiff's application for benefits. The ALJ uses a five-step process in evaluating disability claims. See 20 C.F.R. §§ 404.1520 & 416.920. Essentially, this process requires the ALJ to consider whether a claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and (5) if not, whether he can perform other work. See id.; M&R 3. On April 26, 2006, the ALJ found that plaintiff was not working; that plaintiff has severe impairments of fibromyalgia, a major depressive/Bipolar I disorder, a personality disorder, and Raynaud's syndrome;" that plaintiff "does not have an impairment or combination of impairments that meets or medically equals" a listed requirement; that plaintiff could not return to her past relevant work; and that plaintiff retained the residual functional capacity ("RFC") "to perform a limited range of medium work." R. at 18-23. Regarding plaintiff's

2

RFC, the ALJ found that plaintiff could lift 50 pounds, carry 25 pounds, and "perform simple, routine, repetitive tasks in a non-production environment with limited interpersonal interaction" and "an option to alternate sitting and standing at one-hour intervals." R. at 23; M&R 3-4.

In making these determinations, the ALJ reviewed plaintiff's medical records. R. at 18-22; see M&R 4-7 (summarizing evidence). Additionally, the ALJ evaluated plaintiff's symptoms, including her pain, and concluded that her testimony concerning her pain was "not entirely credible." R. at 22. The ALJ stated:

> The claimant testified at the hearing that she suffers from chronic pain throughout her body in all muscles and joints as well as in her legs and low back. She reported chronic headaches, depression, and fatigue. She testified that problems with memory and pain preclude her from performing her past relevant work and noted that she gets irritated quickly and has problems getting along with others.
>
> Nevertheless, both the claimant and her spouse indicated to Dr. Carraway that her chronic interpersonal difficulties predated her chronic pain symptoms, and she testified at the hearing that she left her last job due to personal reasons, not because of any illness or sickness. Further, the claimant acknowledged at the hearing that she was on unemployment for 6 months after she left her last job and thus held herself out as employable despite her allegations that she was unemployable due to her impairments. The claimant also testified at the hearing that she could take care of her personal needs, and she has a driver's license and drives. Further, physical examinations have repeatedly shown normal strength in the upper and lower extremities and no impairment in the claimant's ability to ambulate or perform fine and gross movements effectively.

Id. The ALJ also heard testimony from a vocational expert, who answered hypothetical questions and stated that a person of plaintiff's age, education, and work experience could perform jobs such as photocopy operator, shipping and receiving weigher, and mail clerk. Id. at 24.

At the hearing, the ALJ noted that a letter plaintiff submitted in support of her disability from her former supervisor contained the same letterhead and typeset as a letter plaintiff submitted on her own behalf. Id. at 281-83. Plaintiff denied writing the former supervisor's letter. Id. at 282. On February 9, 2006, plaintiff submitted to the ALJ a warranty deed showing plaintiff's former

3

supervisor's signature and an affidavit from the former supervisor stating that the materials submitted by plaintiff were genuine. See id. at 256-61. In the ALJ's April 20, 2006, decision, the ALJ found that "the signatures also appeared to have been penned by the same individual." Id. at 22. The ALJ "found the claimant's argument unconvincing in light of the obvious similarities as noted above." Id. at 23. The ALJ did not mention the warranty deed or affidavit in the April 20, 2006, decision denying benefits.

The ALJ concluded:

> Based on the testimony of the vocational expert, . . . considering the claimant's age, education, work experience, and residual functional capacity, the claimant has been capable of making successful adjustment to other work that exists in significant numbers in the national economy. A finding of 'not disabled' is therefore appropriate under the framework of the above cited rules.

Id. at 25. On August 8, 2006, the Appeals Council "found no reason" to review the ALJ's decision and denied plaintiff's request for a review. Id. at 8. The Appeals Council explained that it "considered the reasons you disagree[d] with the [ALJ's] decision and the additional evidence." Id.

III.

Plaintiff makes three objections to the M&R: (1) that the M&R erred in finding that the ALJ's hypothetical questions to the vocational expert fairly conveyed plaintiff's impairments and limitations; (2) that the M&R did not give sufficient weight to plaintiff's testimony concerning her pain; and (3) that the M&R erred in finding the ALJ's decision to be supported by substantial evidence in light of the ALJ's failure to discuss plaintiff's post-hearing evidence regarding her former supervisor's letter.

A.

At the fifth step in the ALJ's five-step process, the Commissioner bears the burden of showing that there is some other type of substantial gainful employment that the claimant can

4

perform. 20 C.F.R. § 404.1560(c); Johnson v. Barnhart, 434 F.3d 650, 653-54 (4th Cir. 2005) (per curiam). "In deciding whether the Commissioner has met her burden, the ALJ generally must accept evidence from a vocational expert, who, based on the claimant's age, education, work experience, and RFC, testifies whether there are jobs for such a person that exist in the national economy." Morgan v. Barnhart, 142 Fed. Appx. 716, 720 (4th Cir. Aug. 5, 2005) (unpublished) (citing 20 C.F.R. § 404.1520(g)(1)). "In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." Walker v. Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989) (per curiam); see Johnson, 434 F.3d at 659.

The vocational expert ("VE") reviewed plaintiff's file and listened to the testimony. R. at 286-89. The VE and the ALJ asked plaintiff certain questions to clarify her work history. See id. at 286-87. The ALJ then posed two hypothetical questions to the vocational expert:

> Q. I'd like you to assume that we have a claimant of the same age, education, and vocational background as the claimant. I'd like you to further assume that said claimant would be limited to the performance of simple routine repetitive tasks in a non-production environment with limited demands or interpersonal action and interaction, limited interaction with others. Would there be any jobs that such person could perform?
>
> A. Yes. One could perform jobs such as laundry laborer, . . . [c]leaner, hospital, . . . [c]leaner, industrial. . . .
>
> Q. This is a second hypothetical. If I limit the claimant as in the first hypothetical but added a limitation to jobs which allowed her to change, allowed the hypothetical claimant to change positions throughout the course of the day at one hour intervals from sitting to standing and back again would she, would there be jobs that such a person could perform?
>
> A Yes, from the light category of work . . . includ[ing] photocopy operator, . . . [s]hipping and receiving weigher, . . . [m]ail clerk. . . .

Id. at 290. On cross examination, plaintiff's representative questioned the VE about jobs available

to those with plaintiff's alleged medical conditions. See id. at 291-92.

Plaintiff initially argues that as a factual matter the ALJ's hypothetical questions did not incorporate plaintiff's RFC. See Objs. to M&R 2-3. However, the ALJ told the vocational expert that her hypothetical plaintiff is "limited to the performance of simple routine repetitive tasks in a non-production environment with limited demands or interpersonal action," which repeats the ALJ's unchallenged finding as to plaintiff's RFC to perform a limited range of medium work. R. at 290; see Fisher v. Barnhart, 181 Fed. Appx. 359, 364 (4th Cir. May 16, 2006) (per curiam) (unpublished). The ALJ followed up by inquiring about an option to alternate sitting and standing at one-hour intervals, which also repeats plaintiff's RFC. R. at 290. Thus, the hypothetical questions "incorporated" plaintiff's RFC.

Plaintiff also claims that the hypothetical questions did not sufficiently relate the effects of plaintiff's mental impairments. See Objs. to M&R 6. However, hypothetical questions to vocational experts need not be medically specific because such information is outside the scope of their expertise and testimony. See Fisher, 181 Fed. Appx. at 364. "Vocational experts are not experts in psychology who are qualified to render opinions on how the claimant's ailments might be reflected in his capabilities; rather, they are employment experts who know the mental and physical demands of different types of work . . . or how many specific jobs exist in the local and national economies." Id. at 365 (citing 20 C.F.R. § 404.1566). The ALJ's hypothetical questions to the vocational expert appropriately tracked plaintiff's abilities and limitations and elicited testimony within the witness' employment expertise.

Plaintiff next claims that the ALJ's hypothetical questions were "not sufficiently precise" to satisfy Walker and its progeny. See Objs. to M&R 4. Plaintiff contends that the hypothetical questions failed to inform the vocational expert that plaintiff "had been diagnosed as severely

bipolar;" "was often unable to concentrate;" "was in constant pain severe enough to warrant treatment with Methadone;" and "would have continued interpersonal difficulty in the work setting." Id. 3.

Hypothetical questions satisfy Walker if they "adequately reflect[]" the plaintiff's characteristics. Johnson, 434 F.3d at 659. In Johnson, the plaintiff claimed that the ALJ's hypothetical questions to the vocational expert "did not accurately reflect her condition because the ALJ neglected to include the alleged severe limitations created by her depression, her drowsiness, and her gross and fine manipulation impairments." Id. The hypothetical questions listed the plaintiff's education, work experience, RFC for light work, need for an option to alternate sitting and standing, restrictions on climbing and operating dangerous machinery, slight mental impairment, and slight impairment in fine and gross manipulation. Id. The Fourth Circuit found that the hypothetical questions – without stating the plaintiff's alleged symptoms – adequately reflected the ALJ's findings on plaintiff's characteristics. Id.

In this case, the ALJ similarly focused the hypothetical questions on plaintiff's abilities relevant to the workforce, not plaintiff's alleged medical symptoms. See id.; see also Fisher, 181 Fed. Appx. at 364 ("[I]t is the claimant's functional capacity, not his clinical impairments that the ALJ must relate to the vocational expert."). A vocational expert is not a doctor able to assess the severity of plaintiff's bipolar condition, difficulty concentrating, pain complaints, and interpersonal deficiencies. Rather, a vocational expert assesses plaintiff's capacity for work despite impairments for which substantial evidence exists. Accordingly, the ALJ's hypothetical questions adequately reflected plaintiff's characteristics. See Johnson, 434 F.3d at 659. Alternatively, the vocational expert stated she had read plaintiff's file. R. at 286. The vocational expert's testimony, therefore, "was sufficiently informed" even if the hypothetical questions should have included plaintiff's other

Case 4:06-cv-00209-D   Document 32   Filed 06/22/07   Page 7 of 13

medical evidence. See, e.g., Childers-Reese v. Chater, 1995 WL 371628, at *1 (4th Cir. June 21, 1995) (per curiam) (unpublished).

Plaintiff relies on Riley v. Chater, 1995 WL 361483 (4th Cir. June 16, 1995) (per curiam) (unpublished). However, in Riley, the ALJ did not ask questions that ensured that the vocational expert knew what claimant's disabilities were and did not disclose why the plaintiff was limited to "light work." Id., at *3. By contrast, here, the ALJ asked hypothetical questions that repeated plaintiff's RFC to perform a limited range of medium work. Further, unlike Riley, the ALJ did not find a severe impairment and then neglect to make findings as to limitations caused by the impairment. Moreover, unlike Riley, the vocational expert had read plaintiff's file.

Finally, plaintiff objects to the M&R's treatment of two Fourth Circuit cases that plaintiff believes require ALJs to describe plaintiff's complaints of pain in hypothetical questions to vocational experts. See Objs. to M&R 6-8. Both cases are distinguishable. In Cornett v. Califano, 590 F.2d 91 (4th Cir. 1978), the ALJ found that the plaintiff, a former secretary, suffered from severe headaches, occasional black-out spells, a visual impairment, hypertension, and dizziness. Id. at 92-93. Responding to hypothetical questions from the ALJ, a vocational expert testified that "the average employer would not hire or keep the claimant employee because of absenteeism that would result from her physical ailments." Id. at 93. However, the vocational expert suggested that plaintiff could start a business at home by working as a dictaphone transcriber. The vocational expert reasoned that such work did not require too much use of the eyes because she would "only have to scan the material [she] typed." Id. The ALJ found that the plaintiff was not disabled, and the district court affirmed. The Fourth Circuit reversed, noting the difficulty the claimant would have in finding clients for such a business: "[t]he law does not impose upon a Social Security claimant the requirement of becoming an entrepreneur . . . ." Id. at 94. In this context, the court

faulted the ALJ's hypothetical questions for not "accurately set[ting] forth the extent and duration of her pain, . . . the nature of her visual impairments, or the large amount of medication she constantly requires." Id. at 93. Unlike Cornett, the ALJ's hypothetical questions described all of plaintiff's limitations for which there was substantial evidence. Moreover, on cross examination, plaintiff's representative elicited testimony from the VE and expressly referenced jobs available to those with plaintiff's alleged medical conditions. See R. at 291-92. Weighing the evidence was the ALJ's job.

In Russell v. Sullivan, 1990 WL 136648 (4th Cir. Sept. 24, 1990) (per curiam) (unpublished), the Fourth Circuit remanded to the ALJ a decision denying benefits to a plaintiff suffering from arthritis, a heart condition, and high blood pressure. Russell, 1990 WL 136648 at *1. The court found that the ALJ ignored objective medical evidence that supported plaintiff's subjective complaints of pain and that portions of the testimony from the vocational expert were missing. Id. at *2. Thus, the court stated that "[w]hen a claimant suffers from a non-exertional impairment such as pain, it is imperative that testimony from a vocational expert be obtained in order to determine whether there are jobs in the national economy which the claimant is capable of performing." Id.

Here, plaintiff does not accuse the ALJ of ignoring objective medical evidence of pain. Instead, plaintiff accuses the ALJ of not giving proper weight to her subjective complaints of pain. See Objs. to M&R 9-11. In making the RFC determination, the ALJ assessed plaintiff's credibility in addition to the medical evidence concerning plaintiff's exertional limitations. The ALJ found plaintiff's complaints about pain to be "not entirely credible." R. at 22. Further, the ALJ did exactly what Russell deemed "imperative": elicit testimony from a vocational expert to determine whether there are jobs in the national economy which the claimant is capable of performing.

The ALJ's hypothetical questions accurately described plaintiff's ability to perform a limited

9

range of medium work. The ALJ's hypothetical questions to the vocational expert "fairly set out all of claimant's impairments" and "adequately reflected" plaintiff's RFC. See Johnson, 434 F.3d at 659. The ALJ weighed the evidence and substantial evidence supports the findings. Accordingly, plaintiff's first objection is overruled.

B.

Plaintiff argues that the M&R "erred by rejecting the rule, recognized elsewhere, that if the claimant has a medical impairment 'which could reasonably be expected to produce the pain or other symptoms alleged,' then the claimant's testimony that she does have the pain that she 'could reasonably be expected' to have is entitled to 'great weight.'" See Objs. to M&R 9. The ALJ must apply a two-step analysis when assessing the credibility of a claimant's subjective complaints of pain. Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996); 20 C.F.R. § 416.929. First, there must be "objective evidence of the existence of a medical impairment which could reasonably be expected to produce the actual pain, in the amount and degree, alleged by the claimant." Craig, 76 F.3d at 594 (internal quotations omitted). Once the ALJ concludes that a claimant has a medical impairment that can reasonably be expected to produce the pain claimed, the ALJ then must evaluate the intensity and persistence of that pain and the extent to which it limits claimant's ability to work. Id. at 595.

At step one, the ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms." R. at 22. At step two, the ALJ considered plaintiff's complaints of chronic pain, headaches, depression, fatigue, and irritability. Id. However, the ALJ found that plaintiff's "statements concerning the intensity, duration and limiting effects of these symptoms are not entirely credible." Id. In explaining this finding, the ALJ cited testimony by the plaintiff that her interpersonal problems predated her chronic pain symptoms,

10

that she left her last job for personal reasons, that she held herself out to be employable in order to receive unemployment benefits, and that she took care of her personal needs. Id. The ALJ also cited physical examinations that indicated no impairment in plaintiff's ability to ambulate and perform fine and gross movements. Id.

Plaintiff urges the court to adopt a rule from the Second and Third Circuits giving plaintiff's testimony concerning pain "great weight" at step two or a rule from the Ninth Circuit requiring the Commissioner to produce clear and convincing evidence that the plaintiff is malingering to prevail at step two. See Objs. to M&R 9-10. The court need not evaluate the ALJ's decision under plaintiff's proposed standards because Craig and its progeny provide authority on how to evaluate subjective complaints of pain at step two. See, e.g., Craig, 76 F.3d at 595-96. Moreover, in reviewing the ALJ's decision, the court does not reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ. See id. at 589. The court finds that the ALJ (in accordance with Craig and its progeny) appropriately evaluated plaintiff's subjective complaints of pain at step two and the ALJ's decision at step two was supported by substantial evidence. See id. at 595-96; 20 C.F.R. § 416.929. Finally, the court has reviewed Hines v. Barnhart, 453 F.3d 559 (4th Cir. 2006), and finds it factually distinguishable. Accordingly, plaintiff's second objection is overruled.

C.

Lastly, plaintiff argues that the M&R "erred by regarding as harmless error the ALJ's failure to consider evidence that Hale had not committed perjury and forgery." Objs. to M&R 11. Plaintiff claims that the ALJ's decision to deny plaintiff's claim "was heavily influenced by the ALJ's conclusion that Hale had submitted a forged letter and had committed perjury." Id.

No evidence supports the claim that the ALJ gave heavy weight to the similarities between

11

plaintiff's letter and that of her former supervisor. The ALJ based her credibility determination on many factors, including that plaintiff's testimony that her interpersonal problems predated her chronic pain symptoms, that she left her last job for personal reasons, that she held herself out to be employable in order to receive unemployment benefits, and that she took care of her personal needs. R. at 22.

Further, the ALJ's failure to refer to plaintiff's post-hearing submission of her former supervisor's warranty deed and affidavit does not require reversal. In support of her argument, plaintiff cites Smith v. Barnhart, 395 F. Supp. 2d 298 (E.D.N.C. 2005), where the court stated "it is simply no response to plaintiff's objection to say that this court must respect the ALJ's decision to consider only that evidence which the judge in fact chose to consider and ignore the remainder." Smith, 395 F. Supp. 2d at 302. However, in Smith, the ALJ was under a heightened duty to supplement the administrative record for a claimant who had inadequate medical records and was proceeding pro se. Unlike Smith, this case does not cause the court "to wrestle with questions like 'how much is enough,' . . . as opposed to the propriety of [the ALJ's] factual determinations." Id. An ALJ need not discuss every piece of evidence. See Piney Mountain Coal Co. v. Mays, 176 F.3d 753, 762 n.10 (4th Cir. 1999). In any event, even if this court gives no weight to the allegedly forged letter and alleged perjury, the ALJ's credibility assessment is supported by substantial evidence. Accordingly, plaintiff's third objection is overruled.

IV.

For the reasons stated above, plaintiff's objections to the M&R are OVERRULED, and the court ADOPTS the M&R. Accordingly, plaintiff's motion for judgment on the pleadings is DENIED, defendant's motion for judgment on the pleadings is GRANTED, and the final decision by the Commissioner is AFFIRMED. The Clerk is directed to the close the case.

12

SO ORDERED. This the 22 day of June 2007.

                                            JAMES C. DEVER III
                                            United States District Judge